PAMELA E. COGAN (SBN 105089)
pcogan@rmkb.com
JENNIFER A. WILLIAMS (SBN 244707)
jwilliams@rmkb.com
ROPERS, MAJESKI, KOHN & BENTLEY
1001 Marshall Street, Suite 300
Redwood City, CA 94063
Telephone:   (650) 364-8200
Facsimile:   (650) 780-1701

Attorneys for Defendant
LIBERTY LIFE ASSURANCE COMPANY OF
BOSTON

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TERREL HOFFMAN,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>LIBERTY LIFE ASSURANCE COMPANY OF BOSTON; SYNOPSYS, INC. LONG TERM DISABILITY PLAN,<br><br>　　　　　Defendants. | CASE NO. CV 08-00301 JF (HRL)<br><br>**DEFENDANT LIBERTY LIFE ASSURANCE COMPANY OF BOSTON'S OPPOSITION TO PLAINTIFF'S MOTION FOR PROTECTIVE ORDER AND TO QUASH SUBPOENA**<br><br>Date:　　　　August 19, 2008<br>Time:　　　　10:00 a.m.<br>Courtroom:　2<br>Judge:　　　Honorable Howard Lloyd |

## I. INTRODUCTION

Plaintiff's motion for a protective order and motion to quash the records subpoena served upon plaintiff's former employer, Synopsys, Inc., must be denied because the information sought is directly relevant to plaintiff's ability to bring this action. In an ERISA action, such as here, extrinsic evidence outside of the administrative record may not be used when considering *whether the claim administrator abused its discretion* in denying benefits. However, relevant evidence supporting a defendant's affirmative defense, which does not open up or require an interpretation of the administrative record, is permissible.

In or around September 2004, plaintiff submitted a claim for long-term disability benefits under a Group Disability Income Policy issued by defendant Liberty Life Assurance Company of Boston ("Liberty") to Synopsys. Approximately one month later, plaintiff was terminated from

1  her employment and signed a severance agreement. Plaintiff did not provide this agreement to
2  Liberty during its handling of her claim nor did Synopsys, so Liberty was not aware of it during
3  the claim. Following a thorough investigation and evaluation of the information obtained,
4  Liberty denied plaintiff's claim and she subsequently filed suit. Thereafter, Liberty's counsel
5  learned of the existence of the severance agreement. Because this agreement may contain
6  language that releases or waives plaintiff's right to employee benefits, which may include
7  disability income benefits at issue, and any and all claims to these benefits, Liberty issued a
8  subpoena to Synopsys in order to obtain a copy.
9  Plaintiff objected to the subpoena on the ground that discovery is not permitted in an
10 ERISA action. In addition, she contends that to allow such discovery would be unfair, as she
11 would not now be permitted to submit additional medical evidence in support of her claim.
12 Plaintiff's argument mixes apples and oranges. While discovery aimed at challenging the
13 propriety of Liberty's claim decision is improper in an ERISA suit because the review is limited
14 to the administrative record, the severance agreement does not relate to the propriety of Liberty's
15 claim decision, but instead supports a possible affirmative defense of waiver and release.
16 Accordingly, this information would not impermissibly open up the administrative record, but
17 rather answers the question of whether plaintiff can bring her claim at all, regardless of whether it
18 has any merit.

## II.  STATEMENT OF FACTS

### A.  The Claim

This ERISA action arises out of the denial of plaintiff's claim for long-term disability income benefits under a Group Income Disability Policy ("the Policy") issued by defendant Liberty Life Assurance Company of Boston to plaintiff's former employer, Synopsys. Plaintiff worked full-time as a Senior Technical Publications Writer from September 4, 2001 until May 17, 2004, her last day of full-time work. Plaintiff continued to work on a part-time basis until she was laid off from her employment on October 22, 2004.

In or around September 2004, plaintiff submitted a claim for long-term disability benefits based upon bilateral elbow tendonitis, cubital tunnel syndrome, and overuse of her right shoulder

and hand as a result of excessive use of the computer keyboard and mouse. Liberty began its investigation and requested medical records from plaintiff and plaintiff's treating physician. The documentation obtained indicated that plaintiff's primary treating provider, physiatrist Dr. Sunita Jayakar, consistently released plaintiff back to work for up to six hours a day. In addition, Dr. Jayakar completed an Attending Physician Statement wherein she opined that plaintiff had a class three physical impairment, which equated to slight limitation of functional capacity, capable of light work.

Consulting physician Dr. Brian Foley then reviewed plaintiff's medical records and provided a report per Liberty's request. Dr. Foley opined that the medical documentation and diagnostic testing did not demonstrate any evidence to support plaintiff's work-related restrictions. Therefore, on January 17, 2005, Liberty concluded that plaintiff was not disabled from her own occupation in accordance with the terms of the Policy and denied her claim.

On July 14, 2005, plaintiff appealed the claim decision and submitted additional information. On December 12, 2005, Liberty upheld its decision to deny plaintiff's claim. Liberty's determination on appeal was supported by the medical records; a peer review by a board certified neurologist and a vocational analysis.

### B. The Lawsuit

On January 16, 2008, plaintiff filed suit in the U.S. District Court for the Northern District of California, alleging claims for breach of the Employee Retirement Income Security Act of 1974 ("ERISA") against Liberty and the Synopsis Long Term Disability Plan ("the Synopsys Plan"). On May 8, 2008, plaintiff and Liberty entered into a stipulation to dismiss the Synopsys Plan from this action.

### C. Liberty's Records Subpoena to Synopsys, Inc.

During a telephone conversation with counsel for Synopsys on June 6, 2008, Liberty learned for the first time that plaintiff had signed a severance agreement upon termination of her employment. (Williams Decl., ¶¶2, 3.) Because such an agreement may contain language that releases or waives plaintiff's right and claim to disability income benefits, Liberty served a records subpoena upon Synopsys on June 12, 2008. Pursuant to the subpoena, Liberty requested

a copy of plaintiff's employment file, including her personnel records, all documents regarding her claim for workers' compensation benefits, and any severance agreements and other documents related to her termination. (Exh. 1 to Perkins Decl.) Plaintiff objected to the subpoena and demanded that Liberty withdraw it, on the ground that there was no discovery allowed in ERISA actions. (Exh. 2 to Perkins Decl.)

On June 30, 2008, the parties engaged in a telephonic meet and confer session wherein defense counsel advised plaintiff that Liberty was not limited to the administrative record in order to assert an affirmative defense. Rather, Liberty was entitled to obtain evidence which may establish that plaintiff's action is barred because she expressly released her claim for employee benefits pursuant to a severance and release agreement. Therefore, while Liberty would not withdraw its subpoena, it offered to narrow the scope to only information pertaining to plaintiff's termination and the severance agreement. (Williams Decl., ¶4.)

Nonetheless, plaintiff continued to object to the subpoena in its entirety. (*See,* Exh. 3 to Perkins Decl.) In response, on July 8, 2008, defense counsel wrote a follow-up letter to plaintiff reiterating its position and again offering to narrow the scope of the subpoena to only information related to plaintiff's employment contracts, severance agreements, and other documents related to plaintiff's termination, including but not limited to all correspondence, electronic mail, notes, drafts, agreements, and instructions. (Williams Decl.,¶5, Exh. 4 to Perkins Decl.)

In the interim, on July 9, 2008, defense counsel spoke again with counsel for Synopsys to advise of the status of the subpoena. At this time, Liberty learned that plaintiff had just requested and obtained a copy of the severance agreement at issue. (Williams Decl., ¶6.) Therefore, defense counsel called plaintiff's counsel on July 11, 2008 to see if a compromise could be reached. Plaintiff's counsel stated that although he did not find any indication in the agreement that plaintiff waived her rights to disability benefits, plaintiff would not allow Liberty access to it. (Williams Decl., ¶7.) Accordingly, on July 15, 2008, plaintiff proceeded with filing her motion to quash. (Williams Decl., ¶8.)

RC1/5153295.1/JAW

- 4 -

DEFENDANT LIBERTY'S OPPOSITION TO MOTION TO QUASH SUBPOENA
CASE NO. CV 08-00301 JF (HRL)

## III. LEGAL ANALYSIS

### A. Liberty Is Entitled to Information Relating to Plaintiff's Ability to Bring Her Claim As It Does Not Open Up the Administrative Record.

Plaintiff cites a plethora of case law in an effort to support her contention that discovery is not allowed in this case because the Court is limited to the administrative record in its review of whether Liberty abused its discretion in denying plaintiff's claim, to which Liberty agrees. However, plaintiff offers no authority supporting her assertion that discovery aimed at exploring a defendant's affirmative defense of waiver or release is prohibited in an ERISA action.

Plaintiff's reliance on *Opeta v. Northwest Airlines Pension Plan for Contract Employees*, 484 F.3d 1211 (9th Cir. 2007) is misplaced. In *Opeta*, the Court held that it would have been error to admit evidence of a surveillance videotape demonstrating plaintiff was not disabled, because it was not part of the administrative record. However, the videotape evidence went directly to the reasonableness of the defendant's claim decision and the issue of whether it abused its discretion in denying disability benefits. In contrast, the evidence of the severance agreement does not go to the merits of the claim determination, but whether plaintiff can bring her claim at all. The information sought by Liberty's subpoena goes directly to exploring an affirmative defense, and is therefore permissible. (*Parisi v. Kaiser Foundation Health Plan Long Term Disability Plan*, 2008 U.S. Dist. LEXIS 5770 (N.D Cal. 2008).)

In *Parisi*, plaintiff submitted a claim for long-term disability benefits one year after his employment was terminated. Upon his termination, plaintiff signed a severance and release agreement in which he released any claims of any kind relating to his employment, expressly including claims under ERISA. Met Life denied plaintiff's claim for benefits based upon three independent physicians who separately opined he was not functionally impaired from performing sedentary work, and was therefore not disabled from his own occupation. The denial was not premised upon the release nor was the release part of the administrative record. Plaintiff then brought suit challenging the denial, to which Met Life responded that plaintiff had released his claims by executing the agreement and was therefore barred from bringing the action. The Court rejected plaintiff's argument that it could not consider the agreement because it was not included

in the administrative record. The Court held:

> The Court does not find that the review of the Release is similar to the admission of post-denial medical evidence. **Here, the Court is not opening up the administrative record or reviewing the administrator's denial under an abuse of discretion standard. Rather, the Court reviews the Release as part of Defendant's affirmative defense of waiver** and, because the agreement is central to the relationship between the parties, the Court finds it material.

(*Id.* at *9.) (Emphasis added.) Accordingly, the Court granted summary judgment for defendant on its affirmative defense of waiver. (*Id.* at *11). (*See also, Orndorf v. Paul Revere Life Ins. Co.*, 404 F.3d 510, 520 (1st Cir. 2005) [noting that outside evidence may be relevant where the challenge is not to the merits of the decision to deny benefits].)

Similarly, Liberty is not limited to the administrative record in order to assert an affirmative defense. Liberty is entitled to obtain evidence which may establish that plaintiff's action is barred because she expressly released her claim for employee benefits pursuant to a severance agreement. Plaintiff's argument that it would be unfair to allow Liberty access to this information because a plaintiff could not submit additional <u>medical</u> information after his or her claim was closed is without merit. Additional medical documentation would open up the administrative record and goes directly to the merits of Liberty's claim decision. Such is not the case with the severance agreement. Instead, it determines whether plaintiff is barred from bringing her claim in its entirety. Liberty is entitled to bring a defense to actively protect its interests in this case.

Additionally, as demonstrated by *Parisi*, the fact that this information existed before Liberty processed and denied plaintiff's claim, but Liberty did not have a copy of it nor rely on it for its denial, does not prevent Liberty from being able to assert it now during litigation. Liberty was not aware of the existence of this agreement during its investigation of the claim. Plaintiff advised Liberty that she was laid off from her employment,[1] but she did not inform Liberty that she had signed a severance agreement or that she may be prevented from seeking disability

---

[1] This information was also contained in some of plaintiff's medical records, as she had also informed her treating physicians that she had been laid off from her employment. Again, however, she did not mention to her physicians that she had also signed a severance agreement.

benefits. Liberty claims personnel are not attorneys and there has been no waiver of Liberty's right to evaluate such a legal defense at this time simply because its claims handler did not request a severance agreement that was not known to exist during the claim.

### B. Because Liberty's Discovery is Not Aimed at the *Merits* of the Claim Decision, The Subpoena is Relevant and Permissible.

Where, as here, the policy unambiguously confers discretionary authority on the claim administrator to construe the terms of the plan and determine eligibility for benefits, the applicable standard of review is an abuse of discretion. (*Met Life Ins. Co. v. Glenn*, 2008 U.S. Dist. LEXIS 5030, *11 (2008); *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 958 (9th Cir. 2006).) Moreover, plaintiff agrees that the applicable standard of review in this case is abuse of discretion. (Pltf's Motion, p6, lines 19-20.) Therefore, it is unnecessary to address the permissible discovery in a case under *de novo* review or the cases cited by plaintiff to that effect.

Because the abuse of discretion standard of review applies here, the Court may review only the administrative record <u>when considering whether the plan administrator abused its discretion</u>. (*Abatie*, 458 F.3d at 970 (emphasis added).) Thus, discovery aimed at challenging the <u>propriety</u> of the decision is improper, although limited discovery may be permitted to establish a conflict of interest. (*Id.* at 970.) Liberty does not dispute these general principles.

Here, by contrast, the information sought by Liberty is not aimed at the merits of the claim decision nor is it tied into the requirements and regulations of ERISA. Evaluation of the viability of the severance agreement does not require interpretation of the policy, the plan documents, ERISA, or the administrative record. It merely requires interpretation of the plain language of the agreement. The severance agreement does not go to whether Liberty abused its discretion or acted with a conflict of interest, but whether plaintiff is entitled to bring this action at all. Accordingly, the principles and limitations set forth in *Abatie* regarding the consideration of extrinsic evidence in an ERISA case do not apply to the circumstances at issue here.

### C. Liberty Is Entitled to Discovery on Plaintiff's Severance Agreement Because Waiver of Benefits under ERISA Is a Viable Defense.

Plaintiff does <u>not</u> contend that the severance agreement is irrelevant. A person's ability to release his or her rights under ERISA is well established. (*Rodriguez-Abreu v. Chase Manhattan*

RC1/5153295.1/JAW — -7- — DEFENDANT LIBERTY'S OPPOSITION TO MOTION TO QUASH SUBPOENA CASE NO. CV 08-00301 JF (HRL)

*Bank*, 986 F.2d 580, 588 (1st Cir. 1993).) Thus, a severance and release agreement signed upon termination of employment can operate to bar a plaintiff's claim for disability benefits under ERISA. (*Piehl v. Metropolitan Life Ins. Co.*, 2005 U.S. Dist. LEXIS 4619 (D. Or. 2005); *Bennett v. CNA Insurance Companies*, 2001 U.S. Dist. Lexis 107 (N.D. Ca. 2001).) Plaintiff asserts that *Piehl* and *Bennett* are not applicable because the release agreements in those cases were part of the administrative record and thus, the defendants did not try to engage in discovery. While these cases are not directly on point with respect to discovery, they nonetheless establish that the affirmative defense of waiver and release based upon a severance agreement is a viable defense. (*See also, Smart v. The Gillette Co. Long-Term Disability Plan*, 70 F.3d 173, 177-178 (1st Cir. 1995).)

In *Hallstead v. Liberty Life Assurance Co. of Boston*, Case No. SA CV05-0735 DOC (MLGx) (C.D. Cal., April 12, 2006), the plaintiff filed an ERISA action challenging the denial of her claim for long-term disability benefits. The Court granted defendant's motion to file and serve an Amended Answer in order to add an affirmative defense based on a general release plaintiff had signed with her employer. (Williams Decl., Exh. B.) Defendant was not aware of the existence of the release during the investigation of plaintiff's claim. Thus, the release was not contained in the administrative record nor was it used as a basis for the denial. Rather, Liberty obtained a copy of the release from plaintiff's former employer during litigation. Yet, despite that the release was not part of the administrative record, the *Hallstead* Court permitted defendant to use it in support of its affirmative defense that plaintiff's ERISA suit was barred. If the end result is permissible, certainly a subpoena (or a request to plaintiff to produce the agreement her attorney now has) to obtain the severance and release agreement is also permissible.

Furthermore, on June 27, 2008, plaintiff submitted a Supplement to Initial Disclosures, which includes a copy of the Order Approving Compromise and Release in plaintiff's workers' compensation claim. (Williams Decl., ¶9, Exh. A.) This information is within the scope of the subpoena served on Synopsys and was not contained in the administrative record but may be relevant to the issue of damage calculation. Plaintiff cannot contend that she is entitled to rely on information outside the administrative record to support her assertion that she has a right to


pursue her claim, while at the same time denying Liberty access to information to dispute it. Liberty is entitled to information which may support its contention plaintiff's claims are barred.

### D. Allowing Liberty To Obtain the Severance Agreement Promotes Efficiency In This Matter.

Under the terms of the Policy, a covered person is entitled to 24 months of "own occupation" benefits if she is found to be disabled from performing all of the material and substantial duties of her own occupation. After 24 months of benefits have been paid, a covered person is entitled to continued long-term disability benefits if she is found to be unable to perform all of the material and substantial duties of her own or any other occupation for which she is reasonably fitted by training, education, experience, age and physical and mental capacity.

On January 17, 2005, Liberty concluded that plaintiff did not meet the definition of disabled from her own occupation and denied her claim. Liberty did not investigate nor make a determination as to whether plaintiff was disabled from the material and substantial duties of any occupation. Thus, should plaintiff prevail in this matter and Liberty is found to have abused its discretion, her claim would then be remanded back to Liberty to determine her eligibility for "any occupation" benefits and Liberty would request and obtain the severance agreement from Synopsys at that time. Should the agreement waive plaintiff's rights and claims to disability income benefits, Liberty would necessarily be entitled to reimbursement for the own occupation benefits paid and plaintiff would be barred from seeking additional benefits. As plaintiff acknowledges in her moving papers, one of the primary goals of ERISA is to provide a method for workers and beneficiaries to resolve disputes over benefits inexpensively and expeditiously. (*Taft v. Equitable Life Assurance Soc'y*, 9 F.3d 11469, 1479 (9th Cir. 1993). Accordingly, in the interest of promoting cost-effectiveness and efficient decision making, this issue should be resolved now.

### E. Plaintiff Provides No Basis For Her Request for a Protective Order.

Rule 26(b)(1) permits discovery regarding any non-privileged matter that is relevant to any party's claim or defense. However, a protective order may be issued, upon "good cause" to "protect a party or person from annoyance, embarrassment, oppression, or undue burden or

expense." (Fed.R.Civ.Pro 26(c); *Sullivan v. Prudential Ins. Co. of Am.*, 233 F.R.D. 573, 575, 2005 U.S. Dist. LEXIS 40941 (C.D. Cal. 2005).) Plaintiff's only argument is that Liberty cannot engage in discovery to obtain a copy of the severance agreement because this is an ERISA action. She does not claim that the agreement is irrelevant, confidential, or protected, or that providing the agreement would cause annoyance, embarrassment, oppression, undue burden or expense. Rather, plaintiff merely asserts that the agreement is not discoverable because of what plaintiff has coined the "Administrative Remedy Rule." Accordingly, plaintiff offers no basis for seeking a protective order and thus, her motion for a protective order must be denied.

## IV.    CONCLUSION

The information sought by Liberty does not go to the propriety of the claim decision nor does it open up the administrative record. Rather, the information relates to whether plaintiff is entitled to bring her claim at all. The evidence of the severance agreement is relevant to exploring a possible affirmative defense in this matter and Liberty will amend its answer to assert this defense if the severance agreement contains a release of plaintiff's ERISA benefits. Therefore, plaintiff's objections to the records subpoena served on Synopsys are improper and Liberty respectfully requests the Court deny plaintiff's motion for a protective order and motion to quash.

Dated: July 29, 2008

ROPERS, MAJESKI, KOHN & BENTLEY

By: /s/
PAMELA E. COGAN
JENNIFER A. WILLIAMS
Attorneys for Defendant
LIBERTY LIFE ASSURANCE
COMPANY OF BOSTON